Gus C. HENSON, Appellant,

v.

GRAYFORD OIL CORPORATION (OIL & GAS ENERGY, INC.) et al., Appellees.

No. 19075.

Court of Civil Appeals of Texas, Dallas.

Jan. 13, 1977.

Rehearing Denied Feb. 22, 1977.

Second Rehearing Denied March 24, 1977.

Stephen C. Porter, Waylon E. McMullen, McMullen & Snyder, Dallas, for appellant.

John A. Thomas, Allen, Bowles, Davis & Horton, Dallas, for appellees.

ROBERTSON, Justice.

Appellant, Gus C. Henson, appeals from a take-nothing judgment non obstante veredicto rendered in favor of appellees, Grayford Oil Corporation (formerly Oil & Gas Energy, Inc.), Maurice C. Hooker and Jack T. Redden. Henson sued the defendants on an oral contract for specific performance or, in the alternative, to recover stock in Grayford Oil Corporation which had previously been delivered to and accepted by the defendants. The jury found that the parties had entered into the oral agreement. Henson appeals on the grounds that the trial court erred in holding that he was not entitled to judgment: (1) for specific performance of an oral agreement because the undisputed evidence shows that he did perform his part and it would be perpetrating a fraud upon him to allow the appellees to repudiate the contract and set up the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01 (Vernon 1968), and Statute of Conveyances, Tex.Rev.Civ.Stat.Ann. art. 1288 (Vernon 1962), as a defense; or (2) awarding him the return of stock in Grayford Oil Corporation equal to one-third of the issued and outstanding stock in the corporation which he transferred in reliance upon the oral agreement between them. We hold that the trial court was correct in holding that the remedy of specific performance on the oral agreement was barred, but that the court erred by not ordering restitution of the stock given by Henson in reliance upon the oral agreement. Accordingly, we affirm in part and reverse in part the judgment of the trial court and remand the cause for further proceedings with instructions.

In the early part of 1974, Henson met with Redden and Hooker to discuss the possibility of their association in an oil and gas venture. At that time it was orally agreed by the three of them that they would enter into business together, and each would own a one-third interest in leases or money acquired. In April 1974 they formed a corporation to solicit capital from private investment sources in accordance with the "Schedule D" Regulation of the Securities & Exchange Commission. The articles of incorporation adopted by the corporation do not refer to any preincorporation agreement between the incorporators. A total of one thousand shares of stock were issued by the corporation, with Henson receiving 333 shares, Hooker receiving 333 shares, and Redden receiving 334 shares. Each became a corporate director, and Henson was elected president, Hooker vice-president, and Redden secretary-treasurer. Subsequently, two oil leases, the subject of this litigation, were acquired by the corporation. Funds were raised through private investment sources, and development of the leases began.

On September 30, 1974, Henson tendered his written resignation as president and director of the corporation and his shares of stock in the corporation to Hooker and Redden in Hooker's office. The corporation was then caused to issue shares of stock which gave Hooker and Redden each a fifty-percent ownership in the corporation. Thereafter, Hooker purchased Redden's stock in the corporation.

After a trial before a jury, the only special issue submitted and answered was:

Special Issue No. 1

Do you find from a preponderance of the evidence that Maurice Hooker and Jack Redden agreed to assign to Gus C. Henson a one-third interest in the oil and gas leases owned by the company in exchange for Gus C. Henson's stock in the company Oil and Gas Energy, Inc.?

Answer Yes or No.

Answer: Yes

The trial court entered judgment non obstante veredicto in favor of the corporation, Hooker, and Redden and ordered that Henson take nothing.

■ Before addressing Henson's arguments, we must first decide whether the trial court erred by holding there was no

evidence to support the jury's finding of an agreement between the parties. According to Henson, after he tendered his resignation, Redden stated, "You will get your assignments as originally agreed." Subsequent to this statement, Henson delivered to Hooker and Redden a stock certificate representing his shares endorsed to the corporation. Henson testified that he surrendered the stock in reliance upon Hooker and Redden's agreement to assign him the interest in the oil leases. He further testified that on several different occasions, he requested Hooker and Redden to execute a written assignment which Henson had prepared to evidence his share in the two oil leases in question, and he was told that no assignment would be executed until a title opinion was completed on the two leases in the first part of 1975, but he was assured by Redden that he would receive his written assignment when the other investors received theirs. Finally, Redden and Hooker refused to convey an interest by written assignment to Henson and alleged that there was no agreement to that effect. Thus, there is evidence to support the jury finding.

However, Hooker contends that the special issue answered by the jury pertains to Redden and Hooker in their individual capacities and not as agents of the corporation. Because Henson transferred his stock to the corporation and not to Redden or Hooker individually and because Hooker and Redden, unless acting as corporate agents, could not assign the corporation's leasehold interests, Hooker argues that there is no consideration for their agreement to assign an interest in the leases. Although no finding concerning liability of the corporation was obtained, we cannot agree that there is no consideration to support the agreement as between Henson and the individual defendants. The only disputed issue was submitted to the jury and was answered that the parties in their individual capacities entered into an agreement whereby Henson promised to transfer his stock and Hooker and Redden promised to assign a one-third interest in the oil and gas leases owned by the company. It is undisputed that Henson did, in fact, transfer his stock and has received no benefit in exchange for this act. Nor is there a dispute that Hooker and Redden refused to cause the corporation to execute an interest in the leases to Henson. When a promisee acts to his detriment in reliance upon a promise, there is sufficient consideration to bind the promisor to his promise. *Porizky v. Olinger*, 177 S.W.2d 995, 997 (Tex.Civ. App.—Dallas 1943, writ ref'd w. o. m.) and *Jeter v. Citizens National Bank*, 419 S.W.2d 916, 918 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.). Since Redden and Hooker were the only remaining stockholders, they presumably had control of the corporation and, therefore, had power to cause it to execute the assignment. Moreover, the mere fact that a promisor promises something he knows he cannot perform does not relieve him of liability on his promise and bar any remedy, such as restitution, for the promise. Thus, there was an oral agreement which had all the requisites of a binding contract except the writing required by the Statute of Frauds. We must decide, therefore, whether Henson's performance of the contract takes the case out of the statute, and, if not, whether he is entitled to rescission and restitution.

Henson contends that the trial court erred in not granting specific performance of the agreement since the undisputed evidence shows that he did perform his part of the agreement. He admits that normally the Statute of Frauds and Statute of Conveyances would bar enforcement of the oral contract, but cites *Matthewson v. Fluhman*, 41 S.W.2d 204, 206 (Tex.Com.App.1931, jdgmt. adopted) for the proposition that when one party to an oral contract in reliance on the agreement does so perform his part, a fraud would be perpetrated on him to allow the other party to repudiate the contract and assert the Statute of Frauds as a defense, and equity will, therefore, remove the case from the operation of the statute and enforce the contract.

However, *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921) establishes three prerequisites for an oral contract to

be enforced notwithstanding the Statute of Frauds, to wit: (1) payment of consideration; (2) possession by the purchaser; and (3) the making by the purchaser of valuable and permanent improvements with the consent of the seller or, in the absence of such improvements, such other facts as would make the transaction a fraud if it were not enforced. *Harris v. Potts*, 545 S.W.2d 126 (Tex.1976) holds that each prerequisite in *Hooks* is indispensible.

Henson argues that there is compliance with the first and third prerequisites, to wit, he did pay consideration, and the facts of this case show a "virtual fraud;" but the impossibility of taking possession of this type of oil lease renders the second prerequisite of the *Hooks* test inapplicable in this situation. Consequently, he seeks specific performance.

We need not decide whether the facts evidence a "virtual fraud" or whether the assignee of an interest in a mineral lease under these facts is required to take possession to entitle him to specific performance because we hold that Henson has an adequate remedy in lieu thereof. Recently, this court in *Davis v. Campbell*, 524 S.W.2d 790, 793 (Tex.Civ.App.—Dallas 1975, no writ) followed the well established principles of *Hooks* and *Matthewson* by holding that a partly performed oral contract may be enforced in equity notwithstanding the Statute of Frauds if the party acting in reliance on the contract has suffered a substantial detriment for which he has *no adequate remedy* and the other party would reap unearned benefits if permitted to plead the statute. *See Morris v. Gaines*, 82 Tex. 255, 17 S.W. 538, 539 (1891); *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1117–18 (1921); *Texas Company v. Burkett*, 117 Tex. 16, 296 S.W. 273, 279 (1927); *Matthewson v. Fluhman*, 41 S.W.2d 204, 206 (Tex.Com.App.1931, jdgmt. adopted); 2 Corbin on Contracts § 429 (1950).

In view of these authorities, we hold that Henson had the burden to plead and prove facts which would bar the application of the Statute of Frauds to the oral contract by proving that he had no other adequate remedy. This he has not done, and in fact, he has pleaded alternatively for recovery of his stock. There has been no part performance by Hooker or Redden which would make the granting of restitution inequitable. *Hausler v. Harding-Gill Co.*, 15 S.W.2d 548, 549 (Tex.Com.App.1929, jdgmt. adopted). Since neither party can enforce this contract, rescission is a proper remedy. *Cheek v. Metzer*, 116 Tex. 356, 291 S.W. 860, 863 (1927). The refusal by Hooker and Redden to perform their part of the agreement is material and goes to the very heart of the contract so as to defeat its basic aims and objectives. Consequently, it is proper to rescind this executory agreement and to allow Henson to recover his stock, thereby returning the parties to the status quo prior to the oral agreement. *Hausler v. Harding-Gill Co.*, 6 S.W.2d 445, 446 (Tex.Civ.App.—San Antonio 1928), *rev'd on other grounds* 15 S.W.2d 548 (Tex. Com.App.—1929, jdgmt. adopted). Consequently, we hold that the trial court was correct in refusing specific performance of the agreement, but erred in refusing to order Hooker to transfer sufficient stock to Henson to entitle him to his one-third interest in the corporation.

Since the stock which Henson transferred to the corporation was immediately reissued to Hooker and Redden and since all of it was ultimately transferred to Hooker, it is within Hooker's power to transfer sufficient stock to Henson in order to restore his one-third ownership in the corporation. Consequently, a judgment of rescission and restitution may properly be rendered against him. Accordingly, we affirm the trial court's judgment denying specific performance of the agreement and finding no corporate liability, but we reverse the judgment concerning Henson's recovery of the stock and remand the cause with instructions to determine the amount of stock necessary to return a one-third interest to Henson and to render judgment for rescission and restitution of the amount of stock so determined.

Reversed and remanded with instructions.

## ON MOTION FOR REHEARING

■ Appellees, Grayford Oil Corporation (Oil & Gas Energy, Inc.) and Maurice Hooker, now contend that we have erred in ordering stock in the corporation returned to appellant Henson after determination of the amount necessary to place the parties in the same position as they were on September 30, 1974. They take the position that Henson waived his cause of action for restitution during the trial below when his attorney made the following statement:

> We feel we have to make an election between asking for the stock back or asking for an assignment and in that sense, yes, we are not asking for the stock back, we are asking for the assignment.

This statement was made during oral argument on appellees' motion for instructed verdict which was overruled. They cite *Dashiel v. Lott*, 243 S.W. 1072, 1073 (Tex. Com.App.1922, jdgmt. adopted) and *Hodge v. Ellis*, 154 Tex. 341, 277 S.W.2d 900, 908 (1955) to support this proposition. Both of these cases concern judicial admissions of fact and are not authority concerning abandonment of a cause of action. They also cite *First National Bank v. McClellan*, 117 S.W.2d 807, 808 (Tex.Civ.App—Amarillo 1938, no writ), which holds that where a party waives a cause of action during trial and the trial court finds in its judgment that the party announced the abandonment in open court and, therefore, is not entitled to relief, that portion of the pleading should not be considered on appeal because it would be inconsistent to induce the trial court to rely on the abandonment and on appeal complain of the trial court's actions.

However, in this case there is no recital in the trial court's judgment concerning abandonment of a cause of action by Henson. The judgment only recites that a directed verdict for the appellees would have been proper; accordingly, the findings of the jury were disregarded, and judgment non obstante veredicto· was rendered. Also, in Henson's motion for judgment he prays in the alternative for· rescission and the return of the consideration paid to appellees equal to one-third of the presently issued and outstanding stock in appellee corporation. Furthermore, the appellees in their motion for judgment make no mention of an abandonment of a cause of action concerning recovery of stock. In the original submission of the cause to this court, the appellees did not assert abandonment in a counterpoint in their brief nor during oral argument. This theory is raised for the first time on rehearing. Under these facts, we cannot agree that an abandonment of a cause of action has occurred. Accordingly, we overrule appellees' contention.

■ Appellees also assert that Henson was required to elect between seeking specific performance and rescission. Application of the doctrine of election of remedies is conditioned upon the existence of two valid, available, and inconsistent remedies. A mistaken belief that a party has a particular remedy and his effort to enforce it is immaterial and does not constitute an election, unless the remedy in fact existed. *Bandy v. Cates*, 44 Tex.Civ.App. 38, 97 S.W. 710, 711 (1906, writ ref'd). In view of our holding that specific performance was not available to either party, the doctrine of election of remedies has no application.

Appellees raise other points on rehearing, but we find no evidence in the record to support them. Appellees also move for oral argument in support of their motion for rehearing, but we conclude that no useful purpose could be served by such argument because their position has been adequately presented in their motion for rehearing.

Accordingly, we reverse and remand this cause, and to avoid confusion, we clarify our instructions. The trial court should determine the changes in the corporation's status and render judgment returning to Henson sufficient stock to place him in the same position he would be in if he had not transferred his 333 shares on September 30, 1974.

Motion for rehearing overruled.